# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| EMILIANO ZAPATA, §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>JENNIFER SMYTH HOWZE, JEFFREY §<br>DAVID WEATHERFORD, JENNIFER §<br>BAKER, HAYS COUNTY JUVENILE §<br>DETENTION CENTER, BRETT §<br>LITTLEJOHN, and WES MAU, §<br>*Defendants* § | Case No. 1:24-CV-00610-SH |

## ORDER

Before the Court are Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, filed July 11, 2024 (Dkt. 10); Plaintiff Emiliano Zapata's Response, filed July 25, 2024 (Dkt. 11); and Defendants' Reply, filed July 31, 2024 (Dkt. 12).

### I. Background

Plaintiff Emiliano Zapata brings this civil rights suit against Hays County, Texas employees Jennifer Smyth Howze, Jeffrey David Weatherford, Jennifer Baker, and District Attorney Wes Mau in their official capacities. Zapata alleges that he was wrongfully prosecuted for the murder of his mother in 2020, when he was sixteen years old.

**A. Alleged Facts**

Zapata alleges the following facts in his First Amended Complaint: Zapata has been diagnosed with autism, a specific learning disability, a speech impairment, mood dysregulation, and ADHD. Dkt. 8 ¶ 8. While he was visiting his mother's house on May 15, 2020, he heard his mother and her boyfriend arguing. *Id.* ¶ 9. Zapata left the house shortly after his mother's boyfriend during the early morning. *Id.* He returned to the house around 6 a.m. to find it engulfed in flames. *Id.* Zapata

1

"tried to get inside the house to find his mother, but the flames were too strong." *Id.* His mother died that day. *Id.*

When officers arrived on the scene, they put Zapata in the back of a police car, when he "made statements that clearly contradicted reality and revealed that he had a very limited understanding of what was happening in front of him." *Id.* ¶¶ 9-10. Zapata and his father spent several hours that day speaking to investigators at the scene, including Defendant Baker. *Id.* ¶ 11. Baker "immediately set her sights on Plaintiff as the main suspect despite viable evidence that pointed to Plaintiff's mother's boyfriend." *Id.*

Five days after the fire, on May 20, 2020, Zapata was arrested "for an unrelated incident that had taken place in April and had already been resolved in municipal court." *Id.* ¶ 14. He was held in juvenile custody until July 7, 2020. *Id.* ¶¶ 15-16. Zapata was arrested for his mother's murder on October 20, 2020, and spent the next five months in juvenile detention. *Id.* ¶¶ 17-18.

Zapata alleges that he "was innocent of any wrongdoing in the death of his mother, but the Defendants ignored facts supporting this and tried to prosecute him anyway to further their own careers." *Id.* ¶ 26. He alleges that Baker ignored evidence demonstrating his innocence and pointing to others as more likely suspects, "had a history of unethical conduct as a police officer," and resigned from the Hays County Sheriff's Office on July 8, 2022, after testing positive for amphetamines. *Id.* ¶¶ 18, 21-22.

Zapata was not certified to be tried as an adult, and the criminal charges against him were dismissed in April 2023. *Id.* ¶¶ 23-24. He alleges that Defendants' actions deprived him of his "constitutional right to due process and his freedom from cruel and unusual punishment as he spent a total of 7 months in jail for no reason and without probable cause." *Id.* ¶ 27.

**B. Litigation**

Zapata brought claims for malicious prosecution, intentional infliction of emotional distress ("IIED"), and due process violations under the Fourteenth Amendment to the United States Constitution against Brett Littlejohn; the Hays County Juvenile Detention Center ("HCJDC"); and Howze, Weatherford, Baker, and Mau in the 428th Judicial District Court of Hays County, Texas. Dkt. 1-2.[1] Defendants removed the case to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1441(a). Dkt. 1. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Zapata filed an Amended Complaint, and the District Court dismissed the motion to dismiss as moot.

Zapata "no longer desires to pursue claims" against HCJDC and Littlejohn and does not name them in the Amended Complaint. Dkt. 8 at 1 n.1. Against the remaining defendants, Zapata asserts claims for malicious prosecution, IIED, due process violations, and civil conspiracy under 42 U.S.C. § 1985, as well as an *ultra vires* claim under Texas law. Zapata seeks an injunction against Defendants' ultra vires conduct, monetary damages, and attorneys' fees and costs.

Defendants now ask the Court to dismiss all claims under Rule 12(b)(6). In response, Zapata agrees to nonsuit his IIED claim, but argues that he has stated plausible claims for relief as to his other claims. Dkt. 11 at 12 n.1.

---

[1] Zapata filed an unrelated disability discrimination suit in this Court against HCJDC and Littlejohn, its administrator. *Zapata v. HCJDC*, No. 1:21-cv-00562-RP (W.D. Tex. June 24, 2021). In that case, Zapata alleged that his rights under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act, as well as his constitutional rights, were violated because he did not receive special education and related services during his confinement in HCJDC. The District Court granted the defendants' motion for summary judgment. Dkt. 66. Zapata appealed, and the Fifth Circuit affirmed the dismissal of Zapata's IDEA and constitutional claims but reversed the dismissal of his ADA and Rehabilitation Act claims and remanded. *Zapata v. Hays Cnty. Juv. Det. Ctr.*, No. 23-50191 (5th Cir. 2023). The parties settled after remand. Dkt. 91.

## II. Legal Standards

### A. Section 1983

Section 1983 of the Civil Rights Act provides for a private cause of action against anyone who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's constitutional rights. 42 U.S.C. § 1983. "A § 1983 suit may be brought against a person in his or her individual or official capacity as well as against governmental entities." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). To state a claim under § 1983, a plaintiff (1) "must allege the violation of a right secured by the Constitution and laws of the United States," and (2) "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right

>to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

### III. Analysis

**A. Malicious Prosecution Claim**

Zapata alleges that Defendants wrongfully pursued murder charges against him without probable cause, which amounts to malicious prosecution. To assert a common law malicious prosecution tort claim, a plaintiff must allege: (1) a criminal prosecution was commenced against the plaintiff; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in the plaintiff's favor; (4) he was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) the plaintiff suffered damages. *Cuba v. Pylant*, 814 F.3d 701, 712 (5th Cir. 2016) (citing *Kroger Tex., Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 792 n.3 (Tex. 2006)). To bring a malicious prosecution claim under § 1983, a plaintiff must allege: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against the plaintiff, who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).

Probable cause in the malicious prosecution context means "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Izen v. Catalina*, 398 F.3d 363, 638 (5th Cir. 2005). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 388 (2014). A "fair probability" that the suspect has committed a crime is sufficient, and that likelihood need not reach fifty percent. *Espinal v. City of*

5

*Houston*, 96 F.4th 741, 745 (5th Cir. 2024). Because a successful malicious prosecution claim requires the absence of probable cause, the existence of probable cause defeats the claim. *Casanova v. City of Brookshire*, 119 F. Supp 2d 639, 653 (S.D. Tex. 2000). Probable cause is determined "as of the time the government instituted criminal proceedings." *Izen*, 398 F.3d at 368.

With their motion to dismiss, Defendants submit the Affidavit of Probable Cause for Directive to Apprehend Zapata for murder, signed October 20, 2020 by a Hays County judge sitting as a juvenile court. Dkt. 10-1 (sealed). Defendants argue that Zapata's malicious prosecution claim fails because: "The basis of Plaintiff's entire lawsuit—that Hays County prosecuted him in the complete absence of probable cause—is affirmatively negated by the probable cause affidavit, which is explicitly referenced by Plaintiff his First Amended Complaint and appropriately evaluated by the Court in resolving this Motion to Dismiss." Dkt. 10 at 3.

Zapata argues that the Court should not consider the probable cause affidavit because "a motion to dismiss must be decided solely on the allegations in the plaintiff's complaint." Dkt. 11 at 6. He argues that if the Court considers the affidavit, it should convert the motion to dismiss to a motion for summary judgment and allow discovery into issues related to the veracity of the claims in the affidavit. *Id.* at 7.

The Court finds that it is proper to consider the affidavit. In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). But "[w]hen a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Id.* "In

6

so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

Zapata refers to the affidavit in his Amended Complaint. Dkt. 8 ¶¶ 17, 20. Because his claims turn on the existence of probable cause, the affidavit is central to the claims. *Ramos v. Taylor*, 646 F. Supp. 3d 807, 815 (W.D. Tex. 2022). The Court considers the affidavit and views all facts in the light most favorable to Zapata, as required under Rule 12(b)(6). *In re Katrina*, 495 F.3d at 205.

By Text Order issued July 22, 2024, the District Court granted Defendants' unopposed motion to file the affidavit under seal because Zapata was a minor when it was executed. Dkt. 9. Under *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021), the Court finds that the interests favoring nondisclosure of information about a minor outweigh the public's right of access and makes detailed findings showing probable cause in a separate, sealed addendum to this Order.

The Court finds that the affidavit provides probable cause to initiate criminal proceedings against Zapata. In general terms, witness accounts, Zapata's statements and behavior after his mother's death, and information from the medical examiner and a third-party insurance investigator support the existence of probable cause. *See Loftin v. City of Prentiss, Mississippi*, 33 F.4th 774, 780 (5th Cir. 2022) (affirming probable cause finding when arrestee made incriminating statements to law enforcement); *Mendenhall v. Riser*, 213 F.3d 226, 236 (5th Cir. 2000) (affirming probable cause finding when suspect was present at the time of the murder and knew of a fatal wound that was not immediately evident).

Zapata challenges the general veracity of the affidavit and argues that the "allegations made against [him] to justify any supposed 'probable cause' were fabricated." Dkt. 11 at 7. But he identifies only one falsehood: Zapata alleges that he returned to the scene before emergency

services arrived, not while the fire was being extinguished. Dkt. 8 ¶ 20. He argues that probable cause was lacking because Defendants knew about but ignored evidence pointing to his mother's boyfriend as a more likely suspect, alleging that the boyfriend was violent and regularly fought with his mother. Zapata also alleges that other evidence against the boyfriend included "his t-shirt with fresh blood spatter" and that the boyfriend did not return to the house after learning of the fire. *Id.* ¶ 11. He does not allege that Defendants knew or should have known about this evidence.

Zapata must "point out specifically the portion of the warrant affidavit that is claimed to be false . . . accompanied by a statement of supporting reasons." *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021). Although he alleges that important information was omitted, that is insufficient to suggest that Defendants disregarded facts "tending to dissipate probable cause" because Zapata has not shown how his allegations against his mother's boyfriend undermine the facts in the affidavit pointing to his guilt. *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th. Cir. 2003). Accepting as true that Zapata's mother and her boyfriend had a violent relationship and that Zapata returned to the scene before emergency services arrived does not weaken other facts in the affidavit pointing to Zapata as a suspect. Even potentially exculpatory evidence alone does not undermine the existence of probable cause. *Camacho v. United States*, 116 F. Supp. 3d 762, 787 (W.D. Tex. 2015). Viewing the facts in the light most favorable to Zapata, the Court finds he has not refuted that the facts in the affidavit are sufficient to support probable cause.

Finally, Zapata argues that the only basis for his arrest was statements he made to Baker "in the immediate aftermath of his mother's death and without the understanding that [he] was a child with autism." Dkt. 8 ¶ 20. He alleges that his multiple disabilities, including autism, affect his ability to communicate and understand social cues from others.

The Court is not persuaded by this argument. First, Zapata's statements to Baker are not the only basis for probable cause. Second, probable cause is based on the facts available to prosecutors at the time proceedings are initiated. *Izen*, 398 F.3d at 368. Zapata alleges that Baker was unaware of his autism diagnosis but does not allege facts suggesting that any of the Defendants knew or should have known of his disabilities or their effect on his ability to communicate. Because probable cause is based on the facts within the prosecutor's knowledge, without allegations that Defendants were aware of Zapata's disabilities, they do not factor into the probable cause determination. *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002).

When the criminal proceedings were instituted, under the totality of the circumstances, a reasonable person could have believed that Zapata was guilty of murder under Texas Penal Code Section 19.02. Because the criminal proceedings against Zapata were supported by probable cause, his claim of malicious prosecution under § 1983 fails. *See Bodzin v. City of Dallas*, 768 F.2d 722, 725-26 (5th Cir. 1985) (affirming dismissal of malicious prosecution claim supported by a finding of no probable cause).

**B. Due Process Claim**

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005). Claims for both procedural and substantive due process can arise from the Due Process Clause. A government violates procedural due process when it acts without appropriate safeguards to protect individual property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). A government violates substantive due process when it deprives an individual of constitutional rights by an arbitrary use of its power. *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000).

When the basis of a plaintiff's § 1983 claim is a violation of either type of due process, the plaintiff first must allege that the government deprived him of a property right. *Roth*, 408 U.S. at 577. Section 1983 does not create property rights; it provides a remedy for violations of federal rights created elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The basis of Zapata's claim that Defendants violated his rights is that they acted without probable cause to arrest, detain, and prosecute him. Because the Court has found that there was probable cause to pursue charges against Zapata, and because his allegations that his due process rights were violated arise entirely from lack of probable cause, Zapata has not stated a violation of his rights associated with his arrest and detention. *Armstrong*, 60 F.4th at 270, 279.[2]

## C. Section 1985 Conspiracy Claim

Next, Defendants argue that Zapata's conspiracy claim under § 1985 fails as a matter of law because an agency and its employees are a single entity that cannot conspire with itself. Zapata responds that Defendants worked within different departments and served different roles and functions and so are separate entities. He cites no supporting authority.

The Court agrees with Defendants. To state a claim under § 1985, Zapata "must plead the 'operative facts' showing a prior illegal agreement, and 'bald allegations' of an agreement do not suffice." *Way v. Mueller Brass Co.*, 840 F.2d 303, 308 (5th Cir. 1988). Zapata alleges no specific facts supporting the existence of an agreement among Defendants, apart from the conclusory statement that "various groups of individual Defendants acted in concert . . . with a meeting of the

---

[2] Defendants argue that Zapata's due process claim is not sufficiently pled because he does not identify specific issues within the existing training programs and a pattern of similar violations. The Court need not decide whether Zapata properly pleads a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), because he does not state an underlying due process violation.

minds, to oppress the civil rights of Plaintiff." Dkt. 8 ¶ 47. These allegations are insufficient. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

When all alleged participants in a conspiracy are members of the same collective entity, the conspiracy does not involve two or more people and cannot support a § 1985 conspiracy claim. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 462 F. Supp. 3d 674, 691 (W.D. Tex. 2020), *aff'd*, 9 F.4th 328 (5th Cir. 2021). Defendants could not conspire with each other under § 1985 in the course of their work because they were all Hays County employees. *United Steel*, 462 F. Supp. 3d at 691 (holding that employees of governmental entity could not conspire with one another for § 1985 purposes).

An exception to the single entity rule exists if Defendants acted for their own personal purposes. *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). Zapata alleges that Defendants ignored facts supporting his innocence and "tried to prosecute him anyway to further their own careers." Dkt. 8 ¶ 26. He also alleges that Defendants "acted out of spite" to target him despite evidence pointing to a different suspect. *Id.* ¶ 70.

These allegations are insufficient to support a finding that the personal purposes exception applies. Even if Defendants were acting out of spite toward Zapata or to further their own careers, they were acting within the scope of their employment for Hays County in that alleged conspiracy, so the exception does not apply. *United States v. Lakeway Reg'l Med. Ctr., LLC*, No. A-19-CV-00945-JRN, 2020 WL 6146571, at *4 (W.D. Tex. Feb. 13, 2020); *So Apartments, LLC v. Everest Indem. Ins. Co.*, No. CV SA-17-CA-965-XR, 2017 WL 5900965, at *3 (W.D. Tex. Nov. 30, 2017). Zapata does not state a § 1985 conspiracy claim.

### D. Ultra Vires Claim

Finally, Zapata alleges that Defendants should be held liable because they acted *ultra vires*, or without legal authority. Defendants argue that Zapata's claim fails because they were performing discretionary functions and acted with legal authority. Again, the Court agrees with Defendants.

Under Texas law, "in certain narrow instances, a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are *ultra vires*." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). To fall within the *ultra vires* exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

Zapata alleges: "At all times material to this action, Defendants were acting . . . within the course and scope of their employment for Hays County, Texas." Dkt. 8 ¶ 72. Defendants have immunity from the claims arising from their duties as police officers and prosecutors. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 739 (5th Cir. 2019); *Crostley v. Lamar Cnty., Texas*, 717 F.3d 410, 424 (5th Cir. 2012). In addition, Texas common law may waive the state's immunity for certain *ultra vires* actions in state court, but that waiver does not apply to federal court absent a specific intention to subject itself to suit in federal court. *Horizon Bank SSB v. Patrick*, No. 1:23-CV-691-RP, 2024 WL 409728, at *4 (W.D. Tex. Feb. 2, 2024), *appeal dismissed sub nom. Horizon Bank SSB v. Hegar*, No. 24-50133, 2024 WL 3937274 (5th Cir. May 9, 2024). Because the *ultra vires* waiver does not expressly apply to federal court, sovereign immunity is not waived.

### IV. Request for Leave to Amend

In the alternative, Zapata asks the Court to grant him leave to amend his Amended Complaint "to address any alleged deficiencies." Dkt. 11 at 11. He does not submit a proposed amended pleading, as required by Local Rule CV-7(b).

Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Because he offers no facts he would plead to cure the deficiencies in his live pleading, the Court cannot assess whether amendment is warranted. *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required when movant fails to inform the court of facts he would plead to cure any deficiencies). Zapata has already amended his pleading once, in response to Defendants' first motion to dismiss. The Court denies Zapata's request for leave to amend as futile.

## V.   Order

The Court **GRANTS** Defendants' Motion to Dismiss (Dkt. 10) and **DISMISSES** Plaintiff's claims **with prejudice.**

The Court will enter final judgment in a separate order.

**SIGNED** on February 13, 2025.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

13